# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:15-cv-204-RJC
### (3:11-cr-104-RJC-DSC-1)

| | |
|---|---|
| **ROBERT BOVE,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct

Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and Motion for Discovery, (Doc. No. 12). [1]

## I.      BACKGROUND

From 2003 until the time of his arrest, Petitioner worked as a Program Technical Specialist

at a company that designs and constructs nuclear power plants, and supplies fuel, maintenance and

modernization services.  (Crim. Case No. 3:11cr104-RJC-DSC-1, Doc. No. 28 at ¶ 53: PSR). On

September 15, 2010, a Wisconsin Police Department's Cyber Crimes unit was conducting an

undercover chat operation. A police officer using the identity of a 42-year-old female logged into

Yahoo! Messenger and entered a "parenting" chat room and made contact with Petitioner, who

was using the name "luvsyourlittlegirl." (Id. at ¶ 5).  While chatting, the undercover officer and

"luvsyourlittlegirl" agreed to exchange images through a Yahoo! feature called Photoshare. (Id. at

¶ 6).  Photos sent by "luvsyourlittlegirl" were of children, some of whom appeared to be females

---

[1] Petitioner filed the motion to vacate *pro se*, then counsel entered an appearance and filed a reply on his behalf. (Doc. Nos. 1, 17). Counsel also filed an Amended § 2255 motion to vacate but later moved to strike it, which was granted. (Doc. Nos. 4, 5, 6).

under the age of three, in various states of undress. (Id.). Further investigation revealed that "luvsyourlittlegirl" was assigned to Petitioner's wife at their Charlotte address, and the transmitted images were part of a known series of child sex abuse images. (Id. at ¶ 7).

Based on this information, a detective from the Charlotte-Mecklenburg Police Department ("CMPD") obtained a search warrant for Petitioner's home and seized computers and various items of digital evidence. (Id. at ¶ 9). At the time the search was executed, Petitioner admitted to detectives that he lived in the residence with his wife and son, that he used Yahoo! and the screen name "luvsyourlittlegirl," and that he possessed images of child pornography. (Id. at ¶ 10). Among the seized items were a Dell laptop computer which was powered on next to Petitioner's bed with a Sealaska USB flash drive inserted in it, an Acer laptop, and a Western Digital external 120 GB hard drive. (Id. at ¶ 11). Police took a photograph of the Dell computer's screen showing a TOR chat window with explicit user screen names. (Id. at ¶ 12). TOR, or "The Onion Router," is software that provides users a form of online anonymity through the use of worldwide network of servers (tunnels) that route the users' internet traffic so the activities cannot be easily tracked or traced. This service is provided to make tracing internet activities more difficult. (Id. at ¶ 12). Forensic examination of the seized flash drive revealed more than 600 images of child pornography including seven videos (113 images and seven videos consisting of 75 images each). (Id. at ¶ 11). A CMPD forensic examiner was unable to review the contents of the two laptops and external hard drive because the laptops were fully encrypted, and the external hard drive was partially encrypted. (Id. at ¶ 13).

After Petitioner was jailed and terminated from his employment, his former employer turned over to the FBI several CDs at Petitioner's cubicle which referred to child pornography. (Id. at ¶ 14). One of the CDs was entitled "True Crypt Rescue Disk," another contained the

program "Evidence Eliminator," and another contained zipped files with titles indicative of child pornography. (Id.). An FBI special agent was unable to view the files contained on the CDs because they were encrypted. (Id.).

In April, 2011, Petitioner was indicted in the underlying criminal case for transporting visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1) (Count 1); and possession of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4) (Count 2). (Id., Doc. No. 8: Indictment).

Petitioner entered a straight up guilty plea to both counts on September 26, 2011, before United States Magistrate Judge David S. Cayer. (Id., Doc. No. 57; Plea and Rule 11 Hearing Transcript). Petitioner stated under oath at the hearing's inception that he recognized his right to proceed before a district judge and expressly consented to proceeding before a magistrate judge. (Id. at 3). The prosecutor summarized the charges and explained Petitioner's sentencing exposure. (Id. at 4). Petitioner stated that he understood the charges as well as the maximum and minimum sentences, that he had spoken to counsel about the sentencing guidelines, that the Court would not be able to determine the sentence until a presentence investigation report ("PSR") had been prepared, that he may receive a sentence higher or lower than the guideline range, and that he would not be able to withdraw his plea even if he received a sentence higher than he had anticipated. (Id. at 6). He acknowledged the rights he was waiving by pleading guilty and was doing so freely and voluntarily without any promises, threats, or coercion. (Id. at 6-8). Petitioner agreed that he had enough time to discuss with his attorney any possible defenses he may have to the charges and that he was satisfied with the services of his attorney. (Id. at 8). He had nothing to say about the services of his attorney and had no questions or statements at that time. (Id.).

Counsel confirmed that he had reviewed the consequences of the guilty plea with Petitioner and was satisfied that Petitioner understood them. (Id.).

The draft Presentence Investigation Report ("PSR"), issued February 13, 2012, scored the base offense level as 22 because the offense involves a violation of 18 U.S.C. § 2252(a)(1). (Id., Doc. No. 24 at ¶ 19). A total of 13 levels were added for the following four specific offense characteristics: material involving a prepubescent minor or minor under the age of 12 (U.S.S.G. § 2G2.2(b)(2); 2 levels); offense involving material that portrays sadistic or masochistic conduct or other depictions of violence (U.S.S.G. § 2G2.2(b)(4); 4 levels); offense involving the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with the intent to view the material (U.S.S.G. § 2G2.2(b)(6); 2 levels); and offense involving 600 or more images (U.S.S.G. § 2G2.2(b)(7)(D); 5 levels). (Id. at ¶¶ 20-23). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 32. (Id. at ¶¶ 29-30). Petitioner had zero criminal history points and a criminal history category of I. (Id. at ¶ 36). The resulting guidelines imprisonment range was 121 to 151 months. (Id. at ¶ 55). Both parties filed objections to the draft PSR. (Id., Doc. Nos. 25, 27).

The Revised Final PSR, issued May 14, 2013, added a fifth special offense characteristic for distribution (U.S.S.G. § 2G2.2(b)(4); two levels), and reduced acceptance of responsibility from three levels to two. (Id., Doc. No. 44 at ¶ 24). The resulting revised offense level was 35 with an advisory guideline imprisonment range of 168 to 210 months. (Id. at ¶ 59).

A sentencing hearing came before the Court on May 21, 2013. (Id., Doc. No. 56: Sentencing Hearing Transcript). The parties stipulated that a factual basis supports the guilty plea and that the Court may rely on the offense conduct set forth in the PSR to establish that factual basis. (Id. at 3). Petitioner confirmed that that he read the PSR, understood it, and went over it

with his attorney. (Id. at 4). Defense counsel objected to the Guidelines § 2G2.2(b)(4) distribution enhancement on timeliness grounds, arguing that it was added 14 months after the draft PSR was filed, and just one week before sentencing. (Id. at 4-5). The Government argued that the enhancement was "so obvious" that it did not prejudice Petitioner. (Id. at 5). The Court agreed that the two-level enhancement "clearly applies" but nevertheless provided counsel with an opportunity to explain why its late application was prejudicial. (Id. 6-7). Defense counsel conceded that "[t]he only prejudice … is that my client faces a higher range, and I can't honestly submit any other legal prejudice other than that…." (Id. at 7). The Government moved for an additional one-level reduction for acceptance of responsibility which the Court granted. (Id.). The resulting advisory guidelines range was 151 to 188 months based on an offense level of 34 and criminal history category of I. (Id. at 7).

The Government presented the testimony of two FBI agents at the sentencing hearing, Computer Forensic Examiner Christopher McNeil and Child Exploitation Agent John Letterhos. (Id. at 8, 36). Agent McNeil testified that he has encountered only two other child pornography offenders who used encryption in his 10 years of experience and, in those cases, "it was not to this extent," and he had never encountered another child pornography offender who used TOR. (Id. at 25). When someone uses both encryption and TOR, it indicates that "someone knows they're committing a crime and they want to provide a certain level of []anonymity and plausible deniability in the future…." (Id. at 25-26). Further, the use of encryption and TOR indicates a certain level of sophistication, and he had "yet to run across somebody with this level of computer savvy … to be able to take this many precautions with their data." (Id. at 26).

Agent Letterhos testified that he attempted to view the two CDs turned over by Petitioner's former employer, however, he was unable to view the files on one CD because they were encrypted

with TrueCrypt. The file names used terms typically associated with images or videos of child pornography from the internet. (Id. at 39). The CD included a peer-to-peer file sharing program such as "BearShare" that are used to trade child pornography. (Id. at 39-40). He was not able to view any of the videos on the second CD because they were all encrypted. (Id. at 42).

Defense counsel argued that number of images over 600 was inaccurate because it included duplicates. He also argued that special offense characteristic enhancements including use of a computer and distribution are invalid because they apply to more than 90% of child pornography offenders, and the Court should vary downward because the guidelines range far exceeds what society requires. (Id. at 50-51). Counsel noted, in particular, that Petitioner's employment required laptop encryption. (Id. at 56).

The Court agreed that counsel had a "pretty valid point" about most child pornography offenses involving a computer, however, "I don't think I've ever heard a case in this court, in this district, that has had this sophisticated use of a computer. So if in the normal min[e]-run case, computers – everybody has computers, I don't know that anybody has had the kind of encrypted, difficult-to-detect use of a computer that this case does, on its facts, seem more unique than the other ones." (Id.). With regards to Petitioner's work requiring encryption on laptops, the following transpired:

> THE COURT: No evidence that the encryption was protecting employment trade secrets or – the evidence seemed to be that it was in and around the child pornography. Some of the encryption tools were right there on the open screen of the laptop with a child porn image behind it. I think the evidence was pretty convincing that that child porn on the flash drive was also on that open laptop. Although you could only see parts of it.
>
> I just, you know if you're asking me to take a leap and say, well, the encryption was – and the sophistication was due to employment; I don't see the evidence of that. I see it in conjunction with someone who's live on a laptop viewing child pornography.

> MR. FOSTER: Your Honor, I guess my point is, the laptop was a work laptop, so it had to have the encryption on it. Now if he made use of that to protect what we're talking about here, that's – you know, I can't fight that.

(Id. at 56-58).

Finally, counsel argued that the Court should vary downward to the statutory minimum because both of the experts who had examined Petitioner found that he presented only a low to moderate risk of re-offending. (Id. at 62). In allocution, Petitioner said that he was sorry for the offenses he committed and the hardship it caused his family. (Id. at 69).

The prosecutor requested a sentence at the low end of the guidelines of 151 months in prison, and noted that Petitioner is more dangerous than the typical offender because the use of encryption makes the offense harder to detect and prolongs the abuse of children. (Id. at 77-78).

The Court noted that it did not appear that Petitioner understood the magnitude of the harm his conduct causes, that there was credible evidence that he was involved in child pornography activity dating back to at least 2007, and that Petitioner's distribution of an image of child pornography to the undercover detective was intended to create a condition where he would, in turn, receive child pornography. (Id. at 84-85). Petitioner's conduct was "heinous" and at least one of the images from the thumb drive was reproduced on Petitioner's laptop in an active mode. (Id. at 85). The case did not involve just the single image distributed to the undercover officer; "[i]t was much, much more than that. And this evidence is much more than this Court usually encounters in these cases." (Id. at 85). The Court also noted that the nature of Petitioner's occupation would make him a sophisticated user of computer tools, and that "those tools were used to protect, conceal, the child pornographic activity that he was engaged in. And it was activity – it was a sophisticated use seldom seen by this court. The T-O-R device, the encryption, all indicates a very sophisticated user/participant in the child pornography crime." (Id. at 85). While in most

cases the use of a computer generic, "in this case the computer usage was so sophisticated that this is exactly the type of case that ought to get a two-level adjustment." (Id. at 86). However, the Court agreed that the number of images being over 600 overstated the magnitude of the offense due to some duplicated "zipped" files, and therefore varied downward by one level. (Id. at 86, 91). The Court accordingly sentenced Petitioner to 135 months for Count 1 and 120 months for Count 2, concurrent, followed by 20 years of supervised release. (Id. at 87-88).

Petitioner argued on appeal that the sentence is procedurally and substantively unreasonable because the Court failed to duly consider his argument that his sentence should be lower based on his low recidivism risk, and that a shorter sentence would have achieved the purposes of 18 U.S.C. § 3553(a). On February 25, 2014, the Fourth Circuit affirmed because it was apparent from the record that the Court committed no procedural sentencing error, and Petitioner failed to rebut the appellate presumption of reasonableness with regards to his below-guidelines sentence. (Id. Doc. No. 59: Fourth Circuit Unpublished Opinion). The mandate issued on April 9, 2014. (Id., Doc. No. 61: Fourth Circuit Mandate).

Petitioner timely filed the instant *pro se* § 2255 motion to vacate on April 29, 2015. (Doc. No. 1); see (Doc. No. 7 at 8). He argues that (renumbered): (A) the Court erred: at the guilty plea stage by delegating the Rule 11 hearing to a magistrate judge who accepted the plea without explaining the elements of the offenses to Petitioner or ensuring that an adequate factual basis existed; and at sentencing by ignoring the evidence that Petitioner's job required the use of encryption, and relying on the Government's erroneous information regarding sophistication; (B) trial counsel was ineffective: prior to the guilty plea for failing to adequately investigate the case, inform Petitioner of defenses including entrapment, and investigate the adequacy of the evidence supporting the distribution count, all of which deprived Petitioner of the ability to make an

informed decision about pleading guilty; at the plea hearing by failing to rebut the Government's incorrect and erroneous information with expert testimony; and at sentencing by failing to object to procedural errors regarding the timeliness of the final PSR's issuance and the delayed sentencing hearing, failing to argue that Guidelines § 2G2.2(b)(3)(F) does not apply on procedural and substantive grounds, and failing to argue that Guidelines § 2G2.2(b)(1) warrants a two-level reduction; and (C) appellate counsel was ineffective for: failing to communicate adequately with Petitioner regarding the appeal; failing to argue in the appellate brief that Guidelines § 2G2.2(b)(3)(F) constituted double counting, and that the Court deprived Petitioner of a speedy sentencing hearing; and failing to file a reply brief on Petitioner's behalf.

The Government filed its response in opposition to the motion to vacate on July 16, 2015, arguing that the claims are procedurally defaulted, non-cognizable, and/or without merit. (Doc. No. 7).

Petitioner filed a reply through counsel on October 25, 2015, clarifying Petitioner's claims as follows: (A) the claim that the Court procedurally erred by relying on the Government's erroneous evidence at sentencing, that there was procedural error with regards to sentencing, and that Petitioner is entitled to a two-level reduction under Guidelines § 2G2.2(b)(1), are withdrawn (Doc. No. 17 at 5 n.5); (B) trial counsel was ineffective for failing to present a computer expert at sentencing to rebut the Government's erroneous information that the CDs were encrypted and that sophisticated means were used to cover up criminal activity, which would have undercut the Government's position regarding sophistication and provided the Court a factual foundation for a downward variance; and failing to object to the application of Guidelines § 2G2.2(b)(3)(F); and (C) appellate counsel was ineffective for failing to argue on direct appeal that the application of Guidelines § 2G2.2(b)(3)(F) constitutes double counting. The claims of ineffective assistance with

regards to Guidelines § 2G2.2(b)(1) and procedural error are withdrawn. (Doc. No. 17 at 7 n.7).[2] Counsel argues that expert testimony at sentencing might well have led the Court to impose a lower sentence, however, this issue's resolution requires discovery and an evidentiary hearing.

Meanwhile, on October 4, 2015, counsel filed a motion for discovery arguing that a defense expert should be permitted to view the CDs found in Petitioner's work cubicle and his laptop to determine whether encryption exists and the level of sophistication these materials reveal. (Doc. No. 12). Counsel argues the discovery will reveal that trial counsel was deficient for failing to call an expert at sentencing and that Petitioner was prejudiced because the Court would have imposed a shorter sentence had it not been convinced of sophisticated computer use. He seeks an evidentiary hearing. The Government filed a response to the discovery motion, asserting that counsel's ineffectiveness for failing to call an expert to testify regarding encryption was not clearly raised in the § 2255 motion to vacate and should be dismissed as conclusory for failure to allege prejudice, and that counsel should not be permitted to re-cast the *pro se* § 2255 claims in the reply memorandum. (Doc. No. 13). Petitioner's counsel filed a reply in support of the discovery motion arguing that the *pro se* § 2255 motion to vacate should be construed liberally and that a finding that the claim is conclusory, procedurally barred, or otherwise defective is premature because he is unable to develop sufficient facts to support this claim until he obtains the requested discovery. (Doc. No. 14).

The § 2255 motion to vacate and Petitioner's motion for discovery are ripe for disposition.

## II.     PETITIONER'S MOTION FOR DISCOVERY

As a general matter, criminal defendants have no right to discovery that is not provided for in the Federal Rules of Criminal Procedure. Weatherford v. Bursey, 429 U.S. 545, 559 (1977).

---

[2] The claims that counsel did not specifically waive in the reply memorandum will be addressed in the discussion section, *infra*.

Discovery may be authorized in a § 2255 case only upon leave of the court, and after a showing of "good cause" by the petitioner. Rule 6(a), Rules Governing § 2255 Proceedings for the United States District Courts. A party requesting discovery must provide reasons for the request. Rule 6(b), Rules Governing § 2255 Proceedings for the United States District Courts. Good cause for discovery is found "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief.'" Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). A petitioner must be able to point to specific factual allegations when making his request; the discovery requests may not be so broad and baseless as to constitute a "fishing expedition." United States v. Wilson, 901 F.2d 378, 381 (4th Cir. 1990). Once good cause is established, a district court has discretion to determine the scope and extent of discovery. See Bracy, 520 U.S. at 909; see also United States v. Roane, 378 F.3d 382, 394 (4th Cir. 2004) (using an abuse of discretion standard to review a district court's denial of discovery in a § 2255 case). A judge may authorize discovery under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the principles and practices of law." Rule 6(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

In the instant case, Petitioner contends that a defense computer expert should be granted access to the CDs found at his workplace and his laptop computer to determine whether encryption is present and to opine about the level of sophistication these materials reveal. However, for the reasons set forth in Section IV(B), *infra*, a defense expert's testimony that these materials were not encrypted and/or that the level of sophistication was low, would make no difference to Petitioner's sentence. Petitioner has failed to demonstrate that the discovery request is supported by good cause under these circumstances. See generally Dyer v. United States, 23 F.3d 1421 (8th Cir. 1994)

(district court did not abuse its discretion by denying discovery in a § 2255 proceeding where the petitioner failed to show how the evidence he sought would establish his innocence); Hall v. United States, 30 F.Supp.2d 883 (E.D. Va. 1998) (no good cause supported a § 2255 discovery motion where the documents at issue were immaterial for impeachment).

Petitioner's motion for discovery is therefore denied.

### III.    SECTION 2255 STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003).

The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."  United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005); see also Fields v. Attorney Gen., 956 F.2d

1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."). Claims of ineffective assistance of counsel at sentencing after a guilty plea require a petitioner to establish a reasonable probability that, absent the alleged error, the results of the proceeding would have been different. United States v. Mayfield, 320 Fed. Appx. 190, 191 (4th Cir. 2009).

To establish prejudice in the context of appellate representation, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

## IV. DISCUSSION

### A. Claims of Trial Court Error.

In its response to the motion to vacate, the Government asserts that Petitioner's claims of trial court error are procedurally defaulted because Petitioner did not raise them on direct appeal, the default is unexcused because he failed to demonstrate actual innocence or cause and prejudice, and the claims are meritless. See United States v. Frady, 456 U.S. 152, 165 (1982); Bousley v. United States, 523 U.S. 614, 621-22 (1998). In his counseled reply, Petitioner withdraws his claims of trial court error at sentencing because they are procedurally defaulted and meritless. (Doc. No. 17 at 5, 7). The Court agrees. Further, the claims of trial court error that Petitioner has not specifically withdrawn are also procedurally defaulted and meritless. The argument that the Court erred at the guilty plea stage by permitting a magistrate judge to preside over the plea hearing, failing to ensure the elements of the offenses were explained to him, and accepting the guilty plea

without a factual basis, are likewise were not raised on direct appeal and Petitioner has failed to demonstrate actual innocence or cause and prejudice. <u>See</u> <u>Frady</u>, 456 U.S. at 165; <u>Bousley</u>, 523 U.S. at 621-22. Moreover, these allegations are conclusively refuted by the record. <u>See</u> (Crim. Case No. 3:11cr104-RJC-DSC-1, Doc. No. 57 at 3-6) (Petitioner testifying at the plea hearing that he consents to proceed before a magistrate judge, understands the charges, discussed possible defenses with counsel, and understood and the rights he was waiving by pleading guilty); (<u>Id.</u> Doc. No. 56 at 3) (defense counsel stipulating that a factual basis supports the guilty plea and that the Court may rely on the PSR's offense conduct to establish that factual basis; Petitioner confirming that he read and understood the PSR and reviewed it with counsel); <u>see</u> <u>generally</u> <u>Blackledge</u>, 431 U.S. at 73-74.

The claims of trial court error at the plea and sentencing hearings are procedurally defaulted and meritless. Therefore, these claims are dismissed.

**B. Claims of Ineffective Assistance of Trial Counsel.**

The Government argues that Petitioner's claims of ineffective assistance of trial counsel are conclusory and fail on the merits. For the following reasons, the Court agrees.

(1)     Petitioner claims that trial counsel provided ineffective assistance before he entered his guilty plea by failing to investigate all possible defenses including entrapment, and failing to investigate the evidence supporting the distribution count, which left Petitioner unable to make an informed decision about pleading guilty.

First, the record conclusively refutes Petitioner's argument that counsel failed to fully investigate and educate Petitioner on "all possible defenses" including entrapment. Petitioner stated under oath at the Rule 11 hearing that he had enough time to discuss with his attorney any possible defenses and that he was satisfied with counsel's services. (Crim. Case No. 3:11cr104-

RJC-DSC-1, Doc. No. 57 at 8). He has failed to overcome these statements' presumption of verity with clear and convincing evidence; his present self-serving allegations to the contrary will be rejected. See Blackledge, 431 U.S. at 73-74; Lemaster, 403 F.3d at 221-22; Fields, 956 F.2d at 1299. Moreover, Petitioner's unsupported claim that he had an entrapment defense is too vague and conclusory to support relief. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

Second, Petitioner's argument that counsel failed to investigate the discovery regarding alleged chat conversations and file distributions, which left him unable to make a reasonably educated decision about the distribution count, is based on a faulty factual premise. Petitioner was not charged with a distribution offense. Rather, he was charged with transporting visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1) (Count 1); and possession of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4) (Count 2). (Crim. Case No. 3:11cr104-RJC-DSC-1, Doc. No. 8: Indictment). The only distribution issue that arose in Petitioner's case was an enhancement for a distribution special offense characteristic that will be discussed in Section (2), *infra*. No ineffective assistance could have occurred with regards to counsel's failure to investigate a non-existent distribution charge. Moreover, his claim is refuted by the record insofar as he admitted to facts establishing a factual basis for both offenses to which he pled guilty, and he fails to explain how further investigation by counsel would have affected the proceedings. See (Id., Doc. No. 53).

To the extent that Petitioner attempts to suggest that counsel's allegedly deficient performance rendered his guilty plea involuntary, this claim is facially insufficient because he has

failed to allege that he would not have pled guilty but for counsel's alleged misadvice. See Hill, 474 U.S. at 59.

(2)    Petitioner claims that trial counsel provided ineffective assistance at sentencing with regards to Guidelines § 2G2.2(b)(6) by failing to present an expert witness to rebut the Government's evidence of sophistication and seek further downward variance, and with regards to Guidelines § 2G2.2(b)(3)(F) by failing to raise a double-counting objection.

As a preliminary matter, the Court finds contrary to the Government's assertion, that Petitioner adequately alleged his ineffective assistance claims in the timely *pro se* motion to vacate. See generally Haines v. Kerner, 404 U.S. 519 (1972) (a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers"); Fed. R. Civ. P. 15(c)(1)(B) (allowing relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"); Mayle v. Felix, 545 U.S. 644, 664 (2005) ("[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").   However, Petitioner's arguments fail on the merits.

First, United States Sentencing Guidelines § 2G2.2(b)(6) provides for a two-level specific offense characteristic increase if the offense "involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing it with intent to view the material." Id.  Petitioner contends that the Court might not have applied this enhancement had counsel called an expert to testify at sentencing that Petitioner's CDs and laptop were not encrypted and/or that there was a low level of sophistication, and that these findings could have supported a downward variance.

Petitioner admitted as part of the offense conduct supporting his guilty plea that he told officers he had child pornography, the Dell laptop found running beside his bed had a TOR chat window open containing explicit user screen names, a forensic examiner was unable to review the contents of the seized Dell and Acer laptops, and the Western Digital external hard drive because they were encrypted, and CDs that FBI agents obtained from Petitioner's former employer included explicit file names, one contained a program entitled "Evidence Eliminator" and another contained explicitly-titled files that an agent was unable to view as they were encrypted. (Crim. Case No. 3:11cr104-RJC-DSC-1, Doc. No. 28 at ¶ 53: PSR). At the sentencing hearing, counsel acknowledged the presence of encryption by noting that it was required by Petitioner's employer, and explaining that Petitioner's failure to provide law enforcement with the encryption key was due to his inability to recall the password. (Id., Doc. No. 56 at 56-58, 81). Counsel attempted to mitigate the encryption and software issues by noting on several occasions during the sentencing hearing that Petitioner's job required him to use encryption, and that TOR and the other software are not illegal and can have legitimate uses. However, counsel cannot be deemed ineffective for failing to present expert testimony that no encryption existed, or that Petitioner's use of encryption and software was not sophisticated, because that would have contradicted Petitioner's factual admissions. See generally Turk v. White, 116 F.3d 1264 (9th Cir. 1997) (counsel could not be deemed ineffective for failing to investigate a competency that would have directly conflicted with the self-defense theory that counsel reasonably selected after investigating the case); Scott v. Dugger, 891 F.2d 800, 805 (11th Cir. 1989) (counsel in a capital case was not ineffective for failing to present mitigating evidence under a theory that would have been "completely false.").

Moreover, Petitioner's supposition that the Court would not have applied this enhancement had counsel presented expert testimony, is flawed. The Court cited sophistication and encryption

among the many factors covered by § 2G2.2(b)(6). These include Petitioner's use of at least two computers and several storage devices, his transmission of a known piece of child pornography to an undercover agent over the internet, and his possession of hundreds of images of child pornography on a flash drive, at least one of which was also present on his Dell laptop. Expert testimony would have made no difference to the Court's application of the two-level enhancement under Guideline § 2G2.2(b)(6), and therefore, Petitioner cannot establish prejudice. See generally Mayfield, 320 Fed. Appx. at 191.

Second, Petitioner's allegation that counsel was ineffective for failing to challenge the sentencing enhancement for distribution is meritless. United States Sentencing Guideline § 2G2.2(b)(3)(F) provides for a two-level increase for the specific offense characteristic that the offense involved "[d]istribution other than distribution described in subdivisions (A) through (E)…."[3] Id. For purposes of this section, "distribution" means "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor…." U.S.S.G. § 2G2.2 App. Note 1.

The crux of Petitioner's claim is that double counting occurs when § 2G2.2(b)(3)(F) is applied to Count 1 because the statute at issue, 18 U.S.C. § 2252(a)(1), already includes distribution as an element of the offense.

Double counting occurs when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another

---

[3] These subsections address distribution: (A) for pecuniary gain; (B) for the receipt or expectation of receipt of a thing of value; (C) to a minor; (D) to a minor that was intended to persuade, induce, or coerce the minor to engage in any illegal activity other than the illegal activity covered under subsection (E); and (E) to a minor that was intended to persuade, induce, entice, coerce or facilitate the travel of the minor to engage in prohibited sexual conduct. U.S.S.G. § 2G2.2(b)(3)(A)-(E).

Guideline provision or by application of a statute. See United States v. Reevey, 364 F.3d 151, 158 (4th Cir. 2004). "[T]here is a presumption that double counting is proper where not expressly prohibited by the guidelines." United States v. Dowell, 771 F.3d 162, 170 (4th Cir. 2014) (quoting United States v. Hampton, 628 F.3d 654, 664 (4th Cir. 2010)).

Petitioner fails to identify anything in the Guidelines that expressly prohibits application of § 2G2.2(b)(3)(F) to a violation of § 2252(a)(1), and the Court is unaware of any case law supporting that position. See generally United States v. Brunner, 393 Fed. Appx. 76 (4th Cir. 2010) (affirming the procedural and substantive reasonableness of the sentence on *de novo* review where the defendant was enhanced pursuant to Guidelines § 2G2.2(b)(3)(F) for knowingly using a peer-to-peer file-sharing program, on his convictions for violating statutes including 18 U.S.C. § 2252(a)(1)); see also United States v. Chiaradio, 684 F.3d 265, 283 (1st Cir. 2012) (noting that the commentary to Guidelines § 2G2.2 does not expressly forbid double counting, but rather, "the structure of the guideline strongly suggests the opposite," and concluding that there is "absolutely no basis" to infer that the Sentencing Commission intended to preclude double counting where the defendant was convicted of a distributing child pornography under Section 2252(a)(2)). Therefore, assuming *arguendo* that double counting occurred, it was presumptively proper and this argument would not have succeeded had counsel raised it at the sentencing hearing.

Petitioner received zealous and effective advocacy as a result of which he received a downward variance. He was not deprived of a fair sentencing proceeding and fails to meet the standard for obtaining Section 2255 relief for the alleged ineffective assistance of trial counsel. Therefore, his claims of ineffective assistance of trial counsel will be denied.

**C. Claims of Ineffective Assistance of Appellate Counsel.**

Petitioner contends that appellate counsel was ineffective for failing to communicate with him adequately regarding his appeal, raise the double counting claim, and file a reply brief.

Appellate counsel is not ineffective for failing to engage in any particular communication with a criminal appellant or to file specific claims or pleadings pursuant to an appellant's request. Indeed, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Smith, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745 (1983)).

Moreover, Petitioner has failed to demonstrate prejudice because he does not show that additional communication or briefing would have probably changed the outcome of the appeal. The claim that asserts appellate counsel should have raised regarding double counting is meritless as set forth in Section (B)(2), *supra*, and counsel's decision not to file a reply brief had no effect on the applicable appellate standard of review or outcome of the appeal.

Therefore, Petitioner's claims of ineffective assistance of appellate counsel will be denied.

V.      CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition and denies his motion for discovery.

IT IS, THEREFORE, ORDERED that:

1.      Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is DENIED and DISMISSED.

2.      Petitioner's Motion for Discovery, (Doc. No. 12), is DENIED.

3.      IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322,

338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: August 8, 2017

Robert J. Conrad, Jr.
United States District Judge